UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIN ARIEL GARCIA GABRIEL,<br><br>　　　　　　　　Petitioner,<br><br>　v.<br><br>LAURA HERMOSILLO et al.,<br><br>　　　　　　　　Respondents. | CASE NO. 2:25-cv-02594-DGE-GJL<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) |

Petitioner Marin Ariel Garcia Gabriel entered the United States as an unaccompanied minor in 2016, was apprehended by immigration officers upon arrival, and then was subsequently placed into removal proceedings and released into the custody of a family member. (Dkt. Nos. 1 at 14; 10-1 at 2.)  In 2017, Petitioner filed an asylum application, which remains pending.  (Dkt. No. 1 at 15.)  In 2024, an immigration judge terminated Petitioner's removal proceedings.  (*Id.*; 11-2 at 44.)  In 2025, immigration officials arrested Petitioner, initiated new removal proceedings, and he is now detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington.  (Dkt. No. 1 at 16.)

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 1

Having reviewed the petition, the return memorandum (Dkt. No. 8), the response (Dkt. No. 11), and all supporting materials, the Court GRANTS Petitioner's writ of habeas corpus by ordering a new bond hearing.

# I    BACKGROUND

### A. Factual Background

Petitioner, a citizen of Guatemala, entered the United States as an unaccompanied minor on May 25, 2016. (Dkt. No. 1 at 14.) Petitioner was subsequently apprehended by the United States Department of Homeland Security ("DHS"). (*Id.*) Upon entry, the United States Department of Health and Human Services' Office of Refugee Resettlement ("ORR") designated Petitioner as an unaccompanied noncitizen child. (*Id.*) On May 25, 2016, DHS issued a Notice to Appear which placed Petitioner in formal removal proceedings pursuant to Immigration and Nationality Act ("INA") § 240, codified at 8 U.S.C. § 1229a. (Dkt. No. 10-1 at 2.) The Notice to Appear charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i)[1] as a noncitizen "present in the United States without being admitted or paroled"; it did not assert he was an "arriving alien." (*Id.*)

On July 3, 2016, ORR released Petitioner into the custody of a family member pursuant to "section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 [("TVPRA")]." (Dkt. Nos. 1 at 14; 11-2 at 11.) On February 17, 2017, "before he reached 18 years old," Petitioner filed an asylum application with the United States Citizenship and Immigration Services ("USCIS"), where it remains pending. (Dkt. No. 1 at 15.) Petitioner's application "was based on

---

[1] The Notice to Appear identifies INA § 212(a)(6)(A)(i), which is codified at 8 U.S.C. § 1182(a)(6)(A)(i).

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 2

his fear of returning to Guatemala resulting from violence, abuse and threats he experienced during his childhood on account of his physical disability, perceived sexual-orientation, and his mam ethnicity." (*Id.*)

On May 17, 2017, "[i]n accordance with section 236 of the [INA]," Petitioner was issued an Order of Release of Recognizance.[2] (Dkt. No. 11-3 at 2.) On December 18, 2024, an immigration judge terminated Petitioner's removal proceedings without prejudice, which Petitioner alleges "effectively afforded USCIS sole jurisdiction to adjudicate [his] pending application for asylum." (Dkt. Nos. 1 at 15; 11-2 at 44.)

On November 4, 2025, during a "targeted immigration enforcement operation," Petitioner was detained a second time and transferred to the Portland Field Office for processing. (*Id.* at 16; Dkt. No. 10-3 at 3.) On November 5, 2025, DHS issued a warrant for arrest of Petitioner pursuant to INA § 236. (Dkt. No. 10-2 at 2–3.) On the same day, Petitioner was issued a new Notice to Appear, which again charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled" and again did not assert Petitioner was an "arriving alien." (Dkt. No. 10-4 at 2.) Petitioner was subsequently transferred to the NWIPC. (Dkt. No. 9 at 3.)

On December 8, 2025, a Tacoma immigration judge denied Petitioner's request for a bond hearing, concluding the immigration court had no jurisdiction because Petitioner is subject to mandatory detention under INA § 235(b)(2)(A), or 8 U.S.C. § 1225(b)(2)(A).[3] (Dkt. No. 10-5

---

[2] INA § 236 is codified at 8 U.S.C. § 1226.

[3] The Custody Order cites "Mandatory Detention under Matter of YAJURE HURTADO, 29 I&N Dec. 216 (BIA 2025)." In *Matter of Yajure Hurtado*, the immigration judge "held that he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235.3(b)(1)(ii)." 29 I&N Dec. at 229.

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 3

at 2.)  Alternatively, the immigration judge concluded, if the immigration court did have jurisdiction, the immigration judge would deny bond because Petitioner was a flight risk.  (*Id.* at 3.)

### B. Procedural Background

On December 17, 2025, Petitioner filed a petition for habeas corpus and accompanying motion for temporary restraining order ("TRO").  (Dkt. No2. 1, 2.)  The Court, treating the pending motion for TRO as a motion to decide the habeas petition on an expedited basis, granted the TRO in part and ordered expedited briefing.  (Dkt. No. 4 at 2.)  Respondents filed a return memorandum on December 31, 2025.  (Dkt. No. 8.)  Petitioner filed a reply on January 7, 2026.  (Dkt. No. 11.)  The Court held oral argument on January 21, 2026.

## II    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on her habeas petition, Petitioner "must show [she] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III   ANALYSIS

**A. Petitioner is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b) and is Entitled to a Bond Hearing under 8 U.S.C. § 1226(a)**

At the outset, Respondents argue Petitioner is subject to mandatory detention under expedited removal proceedings pursuant to 8 U.S.C. § 1225(b), and its implementing regulations, 8 C.F.R. § 235 *et seq*. (Dkt. No. 8 at 1–3.) § 1225 applies to "applicants for admission" to the United States, who are defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories, both of which are subject to mandatory detention.[4] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)). In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention. *Jennings*, 583 U.S. at 303. § 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

Petitioner contends that because he originally entered the United States in 2016, he was not "seeking admission" under § 1225(b) when he was detained on November 4, 2025 while driving to work. (Dkt. No. 11 at 4–5.)

The Court agrees Petitioner is not subject to § 1225's mandatory detention provisions. First, Petitioner's 2016 Notice to Appear indicates he was not seeking admission under § 1225.

---

[4] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 5

1    Notably, the issuing officer explicitly declined to designate Petitioner as an "arriving alien," (*see*

2    Dkt. No. 10-1 at 2), which is the active language used to define the scope of § 1225(b)(2)(a) in

3    its implementing regulation.  8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this

4    chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is

5    placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with

6    [§ 1225(b)].") (emphasis added); see also *Martinez*, 792 F. Supp. 3d at 218 (concluding "arriving

7    alien" language synonymous with § 1225).

8         Second, Petitioner's 2017 Order of Release on Recognizance clearly states he was placed

9    in removal proceedings and released "[i]n accordance with section 236 of the [INA] and the

10   applicable provisions of Title 8 of the Code of Federal Regulations[.]"  (Dkt. No. 11-3 at 2.)  "It

11   is apparent . . . the phrase 'release on recognizance' [is] another name for 'conditional parole

12   under § 1226(a)."  *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (finding a

13   noncitizen released on an "Order of Release on Recognizance" necessarily must have been

14   detained and released under § 1226, including because he was not an "arriving alien" under the

15   regulations governing § 1225 examinations).

16        Third, Petitioner's removal proceedings were terminated in 2024 which presumably

17   terminated all supervision requirements.  (Dkt. No. 10-3 at 3.)  Again, release on recognizance is

18   another name for conditional parole under § 1226(a).  *Ortega-Cervantes*, 501 F.3d at 1115.

19   Conditional parole is only authorized "pending a decision on whether the alien is to be

20   removed."  8 U.S.C. § 1225(a).  Accordingly, once removal proceedings were terminated, there

21

22

23

24

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 6

was no longer a pending decision on whether Petitioner was to be removed, which means the basis for the grant of conditional parole, i.e. "release on recognizance," no longer existed.[5]

Fourth, the 2025 Notice to Appear again declined to classify Petitioner as an "arriving alien," and once again charged him as a noncitizen "present in the United States who has not been admitted or paroled." (Dkt. No. 10-4 at 2.)

Lastly, and perhaps more importantly, Petitioner cannot be subject to the detention procedures contained in § 1225 at all because he came to the United States as an unaccompanied minor. "The detention of unaccompanied minor children is governed by the TVPRA, which does not mandate detention." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025). Instead, the TVPRA provides that "an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). If the unaccompanied child "reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). This requirement of placement in the least restrictive setting is in direct conflict with mandatory detention. *See L.G.M.L. v. Noem*, 800 F. Supp. 3d 100, 111 (D.D.C. 2025) (explaining that under the TVPRA, unaccompanied minors must be placed in removal proceedings, and that "the other removal possibility—which the TVPRA excludes for unaccompanied alien children—is 'expedited removal.'" (internal citations omitted)). Respondents make no attempt to reconcile the two, nor do they argue or

---

[5] And absent from the record is any evidence that Petitioner continued to check-in, or was required to check-in, with any ICE officer after the removal proceedings were terminated.

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 7

present authority suggesting § 1225(b)(2) usurps the protections Petitioner is afforded by the TVPRA.

Moreover, Petitioner filed an asylum application while he was a minor. (Dkt. No. 1 at 15.) As a result, an asylum officer has exclusive "initial jurisdiction" over Petitioner's asylum application, "regardless of whether filed in accordance with . . . section 1225(b)[.]" 8 U.S.C.§ 1158(b)(3)(C). § 1225(b)(2)(A), on its face, applies only if "an examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." But because Petitioner's asylum application was within the exclusive jurisdiction of an asylum officer, in Petitioner's case the examining immigration officer must necessarily be an asylum officer. At present, Petitioner's asylum application remains pending; therefore, a determination under § 1225(b)(2)(A) has never been made and Petitioner cannot be subjected to its corresponding mandatory detention requirements.

In summary, the Court concludes Petitioner is not subject to mandatory detention pursuant to § 1225, and instead is subject to the procedures contemplated under § 1226, thereby making him eligible for a bond hearing. Thus, the immigration judge erred in concluding the immigration court lacked jurisdiction to issue a bond. (Dkt. No. 10-5 at 2.)

Despite the immigration judge concluding the immigration court lacked jurisdiction to issue a bond, the immigration judge alternatively concluded that even if there was jurisdiction, a bond would be denied because Petitioner, according to the immigration judge, was a flight risk. (*Id.* at 3.) Petitioner argues the immigration judge's decision to deny Petitioner a bond was the result of an "erroneous application of law and [a] failure to consider evidence." (Dkt. 11 at 6.)

In general, the Court does not have jurisdiction to review discretionary bond. 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of

this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." To the extent Petitioner asks the Court to second-guess the immigration judge's weighing of evidence, that claim is unreviewable. But § 1226(e) does not preclude "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court . . . , we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Accordingly, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 WL 5809432*4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

Here, the decision to deny a bond was legally erroneous for three reasons. First, it was legally erroneous to conclude the immigration court lacked jurisdiction to consider Petitioner's bond based on § 1225. The Court finds this erroneous conclusion tainted the immigration judge's consideration of Petitioner's bond request. Second, the immigration judge does not appear to have considered the impact of Petitioner's unaccompanied minor status on his eligibility for a bond or the potential effect of 8 U.S.C. § 1232(c)(2)(B), which indicates unaccompanied minors who have reached the age of 18 "shall be eligible to participate in alternative to detention programs." Third, the record is unclear as to what evidence the immigration judge in fact considered in denying Petitioner's bond request. Normally, an

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 9

immigration judge "considers various factors in making [a bond] determination, including the individual's ties to the United States, as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (*citing to In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).[6] The immigration judge's order offers no comment about the application of any of these factors.

As a result, Respondents are ordered to grant Petitioner a new bond hearing under which the immigration judge (1) shall not consider § 1225; (2) shall consider Petitioner's unaccompanied minor status and the potential effect of 8 U.S.C. § 1232(c)(2)(B) on his release eligibility; and (3) shall consider, as may be applicable, the normal factors used to make a bond determination as identified in *Rodriguez Diaz* and *In re Guerra*.[7]

---

[6] *In re Guerra* identifies the following factors an immigration judge may consider in making a bond determination:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

24 I. & N. Dec. at 40.

[7] A consideration of the normal factors in this case would identify the following facts: that Petitioner has lived in Oregon for the past nine years; he has a pending asylum application within the exclusive jurisdiction of USCIS and has a current employment authorization; he has family and friends in Oregon, including a wife and a child who is a United States citizen who depend on his support; he has a successful landscaping business; he has previously complied with all conditions of his release and appeared at every appointment or hearing before USCIS and in the prior removal proceedings; he appears to have no prior criminal history; and he was a passenger, not the driver, of a vehicle that allegedly attempted to flee immigration officials. (Dkt. No. 11-1 at 2–3.)

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 10

### B. Petitioner is Not Entitled to Relief on His Unreasonable Seizure Claims

Petitioner argues his November 4, 2025 arrest violated the Fourth Amendment, the Administrative Procedure Act, and the INA and its implementing regulations because ICE stopped and arrested him without reasonable suspicion or probable cause. (Dkt. No., 1 at 17–23.) Petitioner contends the proper remedy for such a violation is release from custody. (Dkt. No. 11 at 7.)

In the immigration context, an unlawful arrest does not automatically result in suppression of evidence. "We hold that evidence derived from [an unlawful arrest] need not be suppressed in an [immigration] civil deportation proceeding." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984). The Ninth Circuit acknowledges "*Lopez-Mendoza* established that a defendant, including his identity, is properly before a court in a criminal or civil proceeding despite the initial illegal police action." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1132 (9th Cir. 2006). Thus, "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039. This means that even if Petitioner's arrest amounts to a Fourth Amendment violation, he is not entitled to habeas relief on that basis.

### C. Petitioner Fails to Establish He Was Entitled to a Pre-Detention Hearing Under the Facts of this Case.

Petitioner argues that Respondents re-detained him and "deprived him of liberty without first revoking the Order of Release and providing him with written notice and a meaningful opportunity to be heard before a neutral decisionmaker prior to their taking action to re-detain him." (Dkt. No. 1 at 24.) However, Petitioner's previous removal proceedings were terminated on December 18, 2024, which presumably terminated all of Petitioner's supervision

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 11

requirements. (Dkt. No. 10-3 at 3; *see also* Section III.A. *supra*.) Furthermore, the cases Petitioner cites in support of requiring a pre-detention hearing are inapposite. Each case involved a detainee who had been released subject to an order of supervision and continued to be engaged in *active* removal proceedings. *See, e.g., E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1319, No. C25-1192-KKE, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025) (petitioner previously released on an order of recognizance and actively participating in immigration court hearings); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1133, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025) (petitioner released on parole and engaged in ICE monitoring requirements while awaiting immigration hearing); *Ledesma Gonzalez v. Bostock*, -- F. Supp. 3d -- , 2025 WL 2841574, at *1 (W.D. Wash. Oct. 7, 2025) (petitioner previously released on an order of supervision). In contrast, an immigration judge terminated Petitioner's removal proceedings.

Because the Court is not convinced the Order of Release remained operative after the termination of removal proceedings, the Court is unable to conclude Respondents lacked authority to re-detain Petitioner. Here, DHS issued an administrative warrant on November 5, 2025, detained him pursuant to § 1226 and 8 U.S.C. § 1357,[8] and subsequently issued a new Notice to Appear. (Dkt. Nos. 10-2; 10-4 at 2.) Though Petitioner argues Respondents failed to follow proper INA procedures when effecting his arrest[9] (Dkt. No. 1 at 20–21), the "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself

---

[8] INA § 287 is codified at 8 U.S.C. § 1357.

[9] Under the INA, an immigration officer may make a warrantless arrest only when that officer "has reason to believe" that the individual "is in the United States in violation of [the immigration laws]" and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8(c)(2)(ii)).

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 12

suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest . . . occurred." *Lopez-Mendoza*, 468 U.S. at 1039.

Petitioner further argues that the administrative warrant is facially invalid because two exist; one which was issued in Eugene, Oregon, and a second that was issued in Portland, Oregon. (*See* Dkt. No. 10-2 at 2–3.) While the Court agrees the existence of two warrants is an oddity, Petitioner does provide any authority proving this invalidates either warrant—and even if they somehow were invalid because two were issued, *Lopez-Mendoza* remains controlling.

## IV    CONCLUSION

Respondents have initiated new removal proceedings against Petitioner pursuant to 8 U.S.C. § 1226 and are ordered to follow its statutory procedures. Because Respondents are ordered to comply with § 1226, the Court denies Petitioner's due process argument. If Respondents fail to comply with this Order, Petitioner may seek further relief from the Court at that time.

The Court GRANTS the petition for writ of habeas corpus (Dkt. No. 1) by ordering a new bond hearing as follows:

1. Within **seven (7) days** of receiving Petitioner's request for a bond hearing, Respondents must either provide him with a constitutionally adequate bond hearing under 8 U.S.C. § 1226(a) or release him under an appropriate order of supervision.

2. Respondents are ENJOINED from denying Petitioner the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b); he is not subject to mandatory detention under 8 U.S.C. § 1225(b).

3. The parties shall file a joint status report in **fourteen (14) days** confirming compliance with this Order.  The status report shall detail if and when the ordered bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

The Clerk shall enter judgment and close the case.

Dated this 26th day of January, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITION FOR HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 14